IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CATHERINE M. KNIPE, | Case No. 3:14-cv-01533-SI |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Karen Stolzberg, Attorney at Law, 11830 SW Kerr Parkway, #315, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Billy J. Williams, Interim United States Attorney, and Janice E. Herbert, Assistant United States Attorney, U.S. Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah Elizabeth Moum, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ms. Catherine M. Knipe ("Knipe") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for supplemental security income ("SSI") under Title XVI of the Social Security Act. For the

following reasons, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Knipe was born on April 19, 1977, and was 33 years old at the time of her application for SSI. AR 33. Knipe gave conflicting reports regarding whether she completed the eighth or ninth grade, but she consistently reported that she never graduated from high school or obtained her GED. AR 93, 654-56. While in school, she attended special education classes. AR 93. Knipe worked at a McDonald's restaurant for two months in 1996, but she was fired for being "too slow." AR 159. She also worked as a telemarketer for two to three days in 1999, but had trouble reading the script. AR 84, 666. Knipe has not held any other jobs. AR 33. Knipe lives with her fiancé, Shawn Mackey, and three of her four children. AR 653. Knipe's oldest child lives with his grandmother. *Id.*

Knipe filed a Title XVI application for SSI on April 15, 2010. AR 82. Knipe alleges disability based on epileptic seizures, cerebral palsy, learning disabilities, and depression. AR 92. Knipe alleges that her disability began at least as early as August 1, 1980. AR 24, 113.

The Commissioner denied Knipe's application initially and upon reconsideration. Thereafter, Knipe requested a hearing before an Administrative Law Judge ("ALJ"). AR 5, 41-50. Knipe appeared for a hearing on February 11, 2013, and was represented by counsel. AR 646. At the hearing, the ALJ heard testimony from Knipe and vocational expert ("VE") Susan Burckett. AR 646-78. On February 22, 2013, the ALJ issued a decision finding that Knipe was not disabled within the meaning of the Social Security Act since the date of her application. AR 21-36.

Knipe petitioned the Appeals Council for review of the ALJ's decision. AR 20. Knipe submitted exhibits and post-decision evidence to the Appeals Council. AR 6. The evidence included a psychological evaluation dated May 10, 2013, and a letter dated October 22, 2013,

both from Dr. Scott T. Alvord. *Id.* On August 18, 2014, the Appeals council denied the request

for review, rendering the ALJ's decision the final decision of the Commissioner. AR 5-8. The

Appeals Council found that Knipe submitted medical evidence relating to the period after the

ALJ's decision on February 22, 2013, and that those records did not affect the ALJ's decision.

AR 6. Knipe now seeks review of the ALJ's decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one, the ALJ found that Knipe had not engaged in substantial gainful activity since April 15, 2010, the application date.[1] AR 25A.[2] At step two, the ALJ found that Knipe had the following severe impairments: "seizure disorder, residuals from left tibia fracture status post intramedullary rodding, history of cerebral palsy, scoliosis, and learning disorder." *Id.* The ALJ found that other symptoms and complaints in Knipe's medical treatment records, including depression, caused only transient, mild symptoms and vocational limitations. The ALJ thus concluded that these other symptoms and complaints, including depression, did not constitute a severe medically determinable impairment. *Id.*; AR 26. At step three, the ALJ ruled that Knipe did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. AR 26.

The ALJ next assessed Knipe's RFC. The ALJ found that Knipe retained the capacity to perform light work as defined in 20 C.F.R. § 416.967(b). AR 28. Specifically, the ALJ found that Knipe: (1) could "lift and carry 10 pounds frequently and 20 pounds occasionally"; (2) could "stand and walk for two hours of an eight-hour day"; (3) could "sit for up to eight hours of an

---

[1] The ALJ's decision indicates that Knipe filed her application for disability benefits on April 15, 2011, rather than on April 15, 2010. The ALJ appears to have made a scrivener's error regarding this date.

[2] The administrative record inadvertently omitted page three of the ALJ decision, which recites the ALJ's findings in step one and two of the five-step analysis. The Commissioner submitted a supplemental transcript. *See* Dkt. 26-1 at 1-2. This page now appears at AR 25A.

eight-hour day"; (4) could "occasionally use the left lower extremity for operation of foot controls"; (5) could "occasionally climb ramps and stairs"; (6) should do no climbing of "ladders, ropes, and scaffolds"; (7) could "occasionally balance, stoop, kneel, crouch, and crawl"; (8) should "avoid hazards, such as unprotected heights and or dangerous machinery"; (9) could "remember, understand, and carry out simple instructions or tasks typical of occupations with an SVP[3] of one or two"; and (10) could "work in an environment involving only simple, work-related decisions with few, if any, work place changes." *Id.*

In formulating the RFC, the ALJ found that Knipe's testimony "was not fully credible." AR 31. The ALJ gave the physical RFC assessment of Dr. Martin Kehrli, M.D., completed in May 2006, "some weight" because it was "generally consistent with the record as a whole. Recent evidence, however, supports even greater limitations." *Id.* The ALJ also gave "some weight" to the RFC assessments of Dr. Richard Alley, M.D., completed in June 2007, and Dr. Sharon Elder, M.D., completed in February 2011, because the assessments were generally consistent with the evidence of record. AR 31-32. Additionally, the ALJ considered evidence from Dr. Donna Wicher, Ph.D., in order to assess Knipe's mental impairments. AR 30. The ALJ gave Dr. Wicher's psychodiagnostic evaluation, performed in November 2004, "some weight because the record indicates only mild limitations caused by depression." AR 32. The ALJ considered evidence from Dr. Nathan Margaret, M.D., who performed a consultative physical examination in November 2004. AR 30. The ALJ gave Dr. Margaret's examination "limited weight because the record as a whole supports even greater restriction." AR 32. The ALJ considered a comprehensive neurology examination performed by Dr. Tatsuro Ogisu, M.D., in May 2006. AR 30. The ALJ found Dr. Ogisu's opinion "somewhat persuasive because he

---

[3] "SVP" means "Specific Vocational Preparation." Dkt. 16-3 at 2.

examined the claimant in person and cited objective findings to support his recommended

limitations." AR 32. Finally, the ALJ considered a function report from Mr. Mackey completed

in September 2010. The ALJ gave this evidence "some weight because it is generally consistent

with the claimant's allegations." AR 33.

At step four, the ALJ determined that although Knipe had no past relevant work, Knipe's

RFC rendered her able to perform unskilled work. AR 33-34. At step five, based on the

testimony of the VE, the ALJ concluded that Knipe could perform jobs—such as a small product

assembler, fishing rod assembler, and electronics worker—that exist in significant numbers in

the national economy. AR 34. Thus, the ALJ ruled that Knipe is not disabled. AR 35.

## DISCUSSION

Knipe argues that the Appeals Council erred by failing to include new and material

evidence on the record in review. Knipe further argues that the ALJ erred by: (1) failing to fully

develop the record; (2) concluding that Knipe's depression is not a severe medically

determinable impairment; (3) improperly assessing the credibility of Knipe's subjective

symptom testimony; (4) improperly evaluating the credibility of the lay testimony of

Mr. Mackey; and (5) improperly formulating an RFC that failed to reflect all of Knipe's

limitations. Each argument will be addressed in turn.

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246

F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to

the agency for additional investigation or explanation, a court has discretion to remand for

immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-

1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an

award of benefits is appropriate when no useful purpose would be served by further

administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). It was recently described by the United States Court of Appeals for the Ninth Circuit:

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 775 F.3d at 1141 (observing that a court's "flexibility" includes the

option to "remand on an open record for further proceedings") (citing *Garrison*, 759 F.3d at 1021).

## A.  Supplemental Evidence Submitted to the Appeals Council

After the ALJ issued her opinion finding Knipe not disabled, Knipe obtained a post-hearing neuropsychological evaluation from Dr. Scott T. Alvord, Psy. D., on May 10, 2013. Dkt. 16-1 at 4-10. Dr. Alvord also wrote a letter dated October 22, 2013, regarding his evaluation of Knipe. *Id.* at 2-3. Knipe submitted this additional evidence to the Appeals Council when she sought review of the ALJ's decision. AR 6. The Appeals Council stated that although the Appeals Council had "looked at Psychological Evaluation dated May 10, 2013 and a letter dated October 22, 2013, from Scott T. Alvord, Psy.D.," the evaluation and Dr. Alvord's letter "[were] about a later date" than the ALJ's decision and thus "d[id] not affect the decision about whether [Knipe was] disabled on or before February 22, 2013 [the date of the ALJ decision]." *Id.* The Appeals Council thus declined to accept this new evidence into the record before it. *See* AR 9. The Appeals Council did, however, include in the record a letter from Knipe's legal counsel that summarized some of Dr. Alvord's findings. AR 9, 154-57. Accordingly, the Commissioner did not include Dr. Alvord's evaluation or letter as part of the record for review on appeal to this Court.[4]

### 1.  Whether the Appeals Council "Considered" the Evidence

Knipe argues that the Appeals Council impermissibly failed to make the supplemental evidence from Dr. Alvord part of the administrative record. Because the Appeals Council looked at the evidence, Knipe contends, the Appeals Council automatically should have made the

---

[4] "As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g).

evidence part of the record. In support of her argument, Knipe cites *Brewes v. Commissioner of Social Security Administration*, 682 F.3d 1157 (9th Cir. 2012). *Brewes* held: "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id.* at 1163. According to Knipe, *Brewes* stands for the principle that the Appeals Council "considers new evidence," which the district court must also consider, any time the Appeals Council looks at a piece of evidence to determine whether to grant or deny review of the ALJ decision. This is not the holding of *Brewes*.

> The Ninth Circuit described the facts in *Brewes* as follows:
>
>> Brewes sought Appeals Council review of the ALJ's decision. She submitted additional evidence, which the Appeals Council received and made part of the record. In April 2009, the Council denied Brewes' request for review. It noted that it "considered the additional evidence [and] found that this information [did] not provide a basis for changing the Administrative Law Judge's decision."
>>
>> * * *
>>
>> [T]he district court refused to consider the additional evidence that was before the Appeals Council but not before the ALJ.

*Id.* at 1161. Thus, in *Brewes*, the Appeals Council expressly "considered" the evidence and actively made the proffered evidence part of the record. It was this supplemental evidence—explicitly made part of the record—that the Ninth Circuit held the district court must consider despite the fact that the ALJ had never seen the evidence. *Id.* at 1160-63. Here, unlike in *Brewes*, the Appeals Council did not incorporate Dr. Alvord's evaluation or letter the proffered evidence into the record. Thus, the Appeals Council did not "consider" the evaluation of Dr. Alvord, and the evaluation did not become part of the record that the Court must, as a matter of law, consider

when determining if substantial evidence supports the denial of benefits. The Court need only consider the evidence under "sentence six" of 42 U.S.C. § 405(g).[5]

### 2. Whether the Evidence Satisfies Sentence Six of § 405(g)

Sentence six of § 405(g) permits remand for consideration of supplemental evidence where the evidence satisfies three elements: (1) the evidence is "new" and not merely cumulative; (2) the evidence is "material;" and (3) "good cause" exists "for the failure to incorporate such evidence into the record in a prior proceeding." Knipe states that she does not argue for a remand of the case under sentence six. Knipe's arguments are, however, consistent with an argument for such remand. According to Knipe, the supplemental evidence from Dr. Alvord is new and material and she had good cause for failing to obtain the evidence at an earlier time.[6]

_____

[5] Other district courts in the Ninth Circuit have reached the same conclusion regarding evidence submitted to the Appeals Council but not explicitly considered or made part of the record. *See, e.g.*, *Underwood v. Colvin*, 2015 WL 5521991, at *4-5 (D. Or. Sept. 10, 2015) (holding that new evidence that the Appeals Council "looked at" and then rejected did not become part of the administrative record); *Neuhauser v. Colvin*, 2015 WL 5081132, at *3 (W.D. Wash. Aug. 27, 2015) ("In contrast to *Brewes*, the Appeals Council in this case did not accept [the plaintiff's] proffered new evidence and make it part of the administrative record. Although the Appeals Council looked at [the evidence], the Appeals Council did not consider the evidence . . . ."); *Stephenson v. Colvin*, 2014 WL 4162380, at *10-11 (C.D. Cal. Aug. 20, 2014) (holding that new evidence did not become part of the administrative record when the Appeals Council "looked at" the evidence but then rejected the evidence because the Appeals Council "reasonably concluded that such evidence 'is about a later time'"); *Winland v. Colvin*, 2014 WL 4187212, at *2 (W.D. Wash. July 25, 2014) ("Although the Appeals Council looked at this new evidence, it did not consider [the evidence] . . . . For this reason, [the evidence] was not made part of the administrative record, which this Court must consider in determining whether or not the Commissioner's decision is supported by substantial evidence."); *Rocha v. Astrue*, 2012 WL 748260, at *4 (D. Ariz. Mar. 7, 2012) ("The Appeals Council stated that they looked at the [new evidence] . . . . The Government is correct, that the Appeals Council did not 'consider' this evidence. Accordingly, this Court considers this evidence under the lens of 42 U.S.C. § 405(g), sentence six.").

[6] The Commissioner argues that Knipe has waived any sentence six arguments because she did not make them in her opening brief. Knipe also specifically disavows such an argument in her reply brief. Because Knipe discusses all the elements required for a sentence six remand,

Evidence is material if it "bear[s] 'directly and substantially on the matter in dispute.'" *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). The claimant "must additionally demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Id.* (citation omitted). A claimant can demonstrate good cause for failing to present evidence to the ALJ if the "evidence could not have been presented at the time of the administrative hearing." *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). "[T]he good cause requirement often is liberally applied, where, as in the present case, there is no indication that a remand for consideration of new evidence will result in prejudice to the Secretary." *Id.*

Knipe argues that Dr. Alvord's evaluation is new and material because it reveals the full extent of Knipe's cognitive deficiencies.[7] Dr. Alvord's evaluation included quantitative testing

_____

however, the Court does not consider this argument waived. Moreover, the Commissioner's brief raises the issue of sentence six remand and argues that Knipe has not met the good cause requirement. *See In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991) (a reviewing court has "discretion to review an issue not raised by appellant . . . when it is raised in the appellee's brief").

[7] The Court notes that—contrary to the Appeals Council's determination—Dr. Alvord's evaluation relates to a time before the ALJ's decision. Neither the record nor Dr. Alvord's evaluation shows events that would have changed the results of Knipe's cognitive testing after February 22, 2013. Dr. Alvord's tests and questions related to Knipe's cognitive abilities in the time period before February 2013. Because the Court remands the case under sentence six, the Court declines to address whether remand would be appropriate without a full sentence-six analysis based on the Appeals Council's erroneous rejection of Dr. Alvord's evaluation. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232-33 (9th Cir. 2011) ("Thus, if the Appeals Council rejected Dr. Thompson's opinion because it believed it to concern a time after Taylor's insurance expired, its rejection was improper. . . . Because Dr. Thompson's opinion concerned his assessment of Taylor's mental health since his alleged disability onset date in 1999, it related to the period before Taylor's disability insurance coverage expired in 2004, and before the ALJ's decision in 2006. Thus, Dr. Thompson's opinion should have been considered. Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." (citation omitted)); *Ward v. Colvin*, 2014 WL 4925274, at *4 (E.D. Cal. Sept. 30, 2014) ("As already discussed, Dr. Foire's opinion was relevant to the time period at issue before ALJ [sic] and the Appeals Council was required to consider it. It failed to do so, and

that showed Knipe had a fourth-grade reading ability, a fifth-grade spelling ability, and a fourth-grade arithmetic ability. Dr. Alvord administered the Wechsler Adult Intelligence Scale Fourth Edition, which showed that Knipe had a general ability in the seventh percentile. Dr. Alvord also administered the Wechsler Memory Scale Fourth Edition, which showed that Knipe had memory ability at or below the sixth percentile in all categories. He assessed her Global Assessment Function ("GAF") as 40-45.[8] Dr. Alvord judged Knipe able to independently manage finances. He noted that her thought processes showed "no evidence of tangentiality, circumstantiality or flight of ideas." Knipe had an instant recall of three out of three words and recalled one out of three words after five minutes. She refused to count by sevens or threes. She calculated six plus four correctly, but said she did not know the answer to five multiplied by nine or five multiplied by five. She spelled the word "world" correctly. Based on the evaluation, Dr. Alvord diagnosed Knipe with cognitive disorder; "major depressive disorder, recurrent (moderate)"; borderline IQ;[9] and epilepsy and probable history of traumatic brain injury (deferred to medical).

---

accordingly, the court remands the matter to the ALJ for consideration of this evidence.") (citing *Taylor*, 659 F.3d at 1233). Other district courts have similarly used sentence six as the proper vehicle for addressing an Appeals Council's improper belief that a medical opinion concerned a time before the ALJ's decision. *See, e.g.*, *Winland*, 2014 WL 4187212, at *4.

[8] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). According to the Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), "a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.' A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (quoting DSM-IV). The Fifth Edition of the DSM dropped the GAF scale due to "its 'lack of conceptual clarity' and 'questionable psychometrics in routine practice.'" *Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (quoting DSM-V).

[9] "'Borderline intellectual functioning' describes an IQ ranging between 71 and 84." *Scolio v. Astrue*, 2012 WL 2420600, at *1, n.1 (E.D. Wash. June 26, 2012) (citing DSM-IV). A borderline IQ range does not fall within the range prescribed by Listing § 12.05. To meet Listing

Knipe argues that she could not previously obtain the evidence from Dr. Alvord because she did not have the financial resources to pay for a complete neuropsychological evaluation. She also points out that the ALJ declined to order such an evaluation. Knipe only underwent testing with Dr. Alvord when the Oregon Health Plan approved payment for it. The Commissioner responds that Knipe has not shown good cause for failing to seek an additional evaluation before the ALJ's decision. The Commissioner argues that Knipe simply obtained a more favorable report from an expert witness after the denial of her claim.

The Ninth Circuit has stressed that limited financial resources should not prejudice a claimant's social security application. *See Gamble v. Chater*, 68 F.3d 319, 321–22 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. . . . It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.") (quotation marks and citation omitted). Thus, particularly in light of Ninth's Circuit's generally liberal approach to the good cause requirement, Knipe's limited financial resources do provide good cause for failing to obtain Dr. Alvord's evaluation at an earlier date.

Considering the record as a whole, this Court finds that there is a reasonable possibility that Dr. Alvord's report would have changed the outcome of the case. *See Mayes*, 276 F.3d at 462. Dr. Alvord's report is more comprehensive, includes more quantitative measurements, and supports a higher level of cognitive impairment than the medical evaluations on the record. The ALJ reviewed medical evidence showing that Knipe underwent evaluations for seizures and learning disabilities. In November 2004, Dr. Donna Wicher, Ph.D., performed a

---

§ 12.05, including § 12.05C, a plaintiff must show an IQ score below 71. *See* 20 C.F.R. Part 404, Subpt. P, App'x 1.

psychodiagnostic evaluation of Knipe. AR 158-61. Dr. Wicher administered the Wechsler Adult Intelligence Scale Third Edition, which showed that Knipe could perform only simple mathematical calculations but had satisfactory common sense judgment, abstraction, and generalization ability. AR 160. Dr. Wicher did not note the percentiles in which Knipe's abilities fell. Dr. Wicher noted no memory or concentration problems. *Id.* Dr. Wicher assessed Knipe's GAF score as 55. AR 161. Based on the evaluation, Dr. Wicher diagnosed Knipe with major depressive disorder (single episode, mild) and "Rule/Out" learning disabilities. AR 160.[10]

In May 2006, Dr. Karen Bates-Smith, Ph.D., performed another psychodiagnostic evaluation of Knipe. AR 172-77. Dr. Bates-Smith administered the Personality Assessment Inventory. AR 172. Although the Personality Assessment Inventory contained inconsistencies possibly due to Knipe's careless responding or reading difficulties, Dr. Bates-Smith concluded that the test showed a valid "Somatic concerns scale" that indicated Knipe felt her health was "not as good as that of age peers." AR 176. During the evaluation, Knipe reported feeling depressed, being easily distracted, and having learning disorders in reading and math. AR 172. Dr. Bates-Smith noted that Knipe had attended counseling for the past year with good results and that Knipe stated that depression did not interfere with her job, which "has been that of Mom." AR 174. Knipe could easily recall personal information except for reasons leading to an Emergency Room visit in January 2006. *Id.* Dr. Bates-Smith estimated that Knipe functions in "the low average range of intellectual ability." AR 175. Based on the evaluation, Dr. Bates-Smith

---

[10] In the medical context, a "rule-out" or "rule/out" diagnosis "means there is 'evidence that [the patient] may meet the criteria for that diagnosis, but [the doctors] need more information to rule it out.' In other words, there is reason to suspect the presence of a 'rule-out' psychotic disorder, but the doctor would not be comfortable giving such a diagnosis at that time." *United States v. Grape*, 549 F.3d 591, 593 n.2 (3d Cir. 2008) (quoting witness testimony) (alteration in original).

diagnosed Knipe with dysthymia, noting "a clear history of a mood disorder which I do not

believe reaches the level of a major depression." AR 176.

Also in May 2006, Dr. Tatsuro Ogisu, M.D., performed a comprehensive neurology

examination. AR 168-71. Dr. Ogisu noted that Knipe could follow a three-step command without

error and had verbal recall of three out of three at five minutes. AR 169. Knipe could add 42

and 39 without error but could not multiply 9 by 8. *Id.* Dr. Ogisu noted a history of cerebral

palsy. He noted no functional limitations related to cognitive deficiencies. AR 171.

In April 2008, Dr. Mary Ransom, M.D., conducted a neurology consultation for possible

seizures. Dr. Ransom suspected primary generalized epilepsy. AR 298-300. Knipe had an MRI

brain scan in May 2008 that identified no seizure focus. AR 288. An electroencephalogram

(EEG) in June 2008 was normal. AR 288-89. Following up with Dr. Mary Ransom, M.D., in

October 2008, Knipe reported no seizures since April 2008. AR 276.

In October 2010, John Adler, Ph.D., performed a psychodiagnostic evaluation. AR 413-

15. Knipe reported seizures and blackouts. AR 413. Dr. Adler noted that Knipe "has not worked

for the past 11 [years] though, often due to problems with finances for transportation-related or

other problems (needs to ride the bus, has little education)." *Id.* Dr. Adler also noted that Knipe

"spent much of [the past 15 years] as a stay-home mother/homemaker, raising children, and

denied major problems in that role." *Id.* Knipe reported that she did three months of volunteer

work for an agency answering phones and helping people decide if they were eligible for

donated food. *Id.* Knipe denied having any episode of depression in the last three years. *Id.*

at 413-14. She recalled three out of three unrelated items after two minutes. *Id* at 414. She could

not accurately calculate 100 minus seven, but she could accurately make change for $10 minus

$6.50. *Id.* at 415. She spelled "family" correctly, and although she could not name one of the

three largest U.S. cities, she could accurately name the Oregon state capital. *Id.* According to

Dr. Adler, Knipe showed signs of "possible cognitive impairment," but Dr. Adler believed those

impairments to be "mild." Based on his evaluation, Dr. Adler diagnosed "rule out" learning

disorder and a history of depression. *Id.*

In February 2011, Dr. John Ellison, M.D., performed a comprehensive neurology

examination. AR 425-27. Knipe complained of seizures and stated that she blacks out twice a

week. AR 425. Dr. Ellison recorded that Knipe could not count by sevens or calculate the

number of nickels in $1.35, but she could correctly calculate the number of quarters in $3.75.

AR 427. Based on his evaluation, Dr. Ellison diagnosed Knipe with grand mal seizure disorder

controlled by the medication Keppra; depression, controlled; and a learning disability. *Id.*

Dr. Alvord's quantitative cognitive testing of Knipe indicates a greater level of

impairment than the limited testing done by the other doctors who assessed Knipe. In contrast to

Knipe's other doctors, Dr. Alvord also considered Knipe's depression to be moderately severe,

discussed the possibility of traumatic brain injury, and made a qualitative assessment Knipe's IQ.

Additionally, although GAF scores "[do] not have a direct correlation to the severity

requirements in [the Social Security Administration's] mental disorders listings," 65 Fed. Reg.

50,746, 50,764-65 (Aug. 21, 2000), Dr. Alvord assessed Knipe's GAF score as ten to fifteen

points lower than Dr. Wicher.

Moreover, Dr. Alvord is the only doctor who discusses Knipe's IQ. Listing 12.05C

requires a claimant to demonstrate "(1) subaverage intellectual functioning with deficits in

adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a

physical or other mental impairment causing an additional and significant work-related

limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Here, the ALJ found that

Knipe did not meet the requirements of Listing 12.05C because (1) there is no valid IQ score of 60 to 70; and (2) Knipe does not have a physical or mental impairment imposing an additional and significant work-related limitation of function. AR 28. The ALJ's finding at step two that Knipe had severe impairments, however, satisfies Listing 12.05C's requirement of an impairment imposing an additional work-related limitation. *See McGrew v. Comm'r*, 2015 WL 1393291, at *5 (D. Or. Mar. 25, 2015) ("The ALJ's finding at step two that Plaintiff had the severe impairment of an adjustment disorder with anxiety and depressive symptoms satisfies the work-related limitation requirement of Listing 12.05C."); *Campbell v. Astrue*, 2011 WL 444783, at *18 (E.D. Cal. Feb. 8, 2011) ("Thus, a finding of severe impairment at step two is a *per se* finding of 'impairment imposing additional and significant work-related limitation of function' as employed in the second prong of Listing 12.05C." (collecting cases)); *see also* Listing 12.00A ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."). Accordingly, the ALJ's conclusion that Knipe did not have a physical or mental impairment imposing an additional and significant work-related limitation was erroneous.

Because the ALJ erred in concluding that Knipe did not have an impairment imposing an additional work-related limitation, the only remaining basis on which the ALJ determined that Knipe did not meet the requirements of Listing 12.05C is the fact that there was no valid IQ score in the record. Thus, an IQ score is potentially dispositive of whether Knipe meets the requirements of Listing 12.05C and is, therefore, disabled. *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 931 (9th Cir. 2014) ("Because meeting the relevant listing conclusively determines that a claimant is indeed disabled, 20 C.F.R. § 416.920(a)(4)(iii), the claimant's IQ score can be

the deciding factor in a determination of intellectual disability."). Dr. Alvord's discussion of

Knipe's IQ score could inform the ALJ's decision about Knipe's IQ level and whether additional

testing is needed. Thus, Dr. Alvord's evaluation is material and merits sentence six remand.

## B. Development of the Record

Knipe argues that the ALJ failed to fully develop the record and that the failure to do so

was a reversible error. Specifically, Knipe argues that the records from Dr. Wicher and

Dr. Bates-Smith establish sufficient uncertainty to trigger the ALJ's duty to fully develop the

record regarding Knipe's cognitive impairments. According to Knipe, the ALJ should have

ordered a complete neuropsychological evaluation of Knipe. The Commissioner responds that

the ALJ had no duty to develop the record because the record contains adequate mental

assessments.

The ALJ has a special duty to fully and fairly develop the record. This duty ensures that

the claimant's interests are considered, regardless of whether legal counsel represents the

claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Ambiguous evidence or

the ALJ's own determination that the record lacks sufficient evidence will trigger the ALJ's duty

to "'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th

Cir. 1996)). The ALJ may discharge his or her duty to fully and fairly develop the record by, for

example, "subpoenaing the claimant's physicians, submitting questions to the claimant's

physicians, continuing the hearing, or keeping the record open after the hearing to allow

supplementation of the record." *Id.* Nonetheless, it remains the claimant's burden to prove the

existence of an impairment. *Marci v. Chater*, 93 F.3d 540, 543-45 (9th Cir. 1996); *see also* 42

U.S.C. § 423(d)(5). Additionally, a claimant does not have "an affirmative right to have a

consultative examination performed by a chosen specialist." *Reed v. Massanari*, 270 F.3d 838,

842 (9th Cir. 2001).

In reaching her decision, the ALJ stated: "[A]fter a review of the records, including a neurological consultative examination and a psychodiagnostic evaluation, the undersigned concluded that [an additional neuropsychological evaluation] is not necessary." AR 24. The ALJ did not, however, discuss whether an IQ test was necessary. Multiple doctors have concluded that Knipe is cognitively impaired. The ALJ accepted a diagnosis of learning disorder. AR 25A. There is also evidence in the record that indicates Knipe attended special education classes while in school, did not graduate from high school or earn a GED, and has difficulty with reading and math. AR 93, 172, 654-56. Because the Court has concluded that it must remand the case under sentence six for consideration of additional evidence from Dr. Alvord, the Court does not further consider whether the ALJ failed to fully develop the record. Because an IQ test could be potentially dispositive, however, failure to order such a test on remand could constitute error if Dr. Alvord's evaluation provides reasons for believing Knipe's IQ is at or below 70.

## C.  Severity of Knipe's Depression

Knipe argues that the ALJ erred by determining that her depression did not constitute a severe medically determinable impairment at step two. The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *see Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (establishing that a step two impairment "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work") (emphasis in original).

At step two, the claimant bears the burden to show the existence of a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). In order to meet this burden, the claimant must show "medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms[.]" 20 C.F.R. § 404.1508. An impairment is "not severe" if

PAGE 21 – OPINION AND ORDER

the medical evidence shows that the impairment "does not significantly limit [a claimant's] physical ability to do basic work activities," which includes the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a)-(b). After an ALJ finds any of a claimant's impairments to be severe, the ALJ must continue with the sequential analysis and consider the effects of all of the claimant's impairments, severe and non-severe. SSR 96-9p, available at 1996 WL 374184, at *5.

When determining whether the medical evidence supports a finding of severity at step two, an ALJ is responsible for resolving conflicts in the medical record, including conflicts among medical source opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between three types of medical source opinions: treating sources, examining sources, and reviewing sources, which are non-treating, non-examining sources that only review a claimant's file. *Holohan*, 246 F.3d at 1201; 20 C.F.R. § 404.1527(c). Generally, a treating source opinion carries more weight than an examining source opinion and an examining source opinion carries more weight than a reviewing source opinion. *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c). An ALJ may reject an uncontradicted medical opinion of a treating source only for "clear and convincing" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). If a treating source's medical opinion is contradicted, however, an ALJ may reject the treating source's medical opinion for "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

Similarly, although an ALJ is not bound by a treating source's disability opinions, the ALJ cannot reject an uncontradicted treating source opinion on disability without presenting clear and convincing reasons for doing so. *Reddick*, 157 F.3d at 725. A contradicted treating

source's opinion on disability can only be rejected with specific and legitimate reasons supported by substantial evidence in the record. *Id.* "In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Id.*

Dr. Wicher diagnosed Knipe with major depressive disorder but noted that it was "single episode, mild." AR 160. Although Knipe reported to Dr. Wicher "symptoms of depression which appear to have worsened within the past few months," Knipe "did not identify any psychological barriers to her ability to perform activities of daily living." AR 161. Dr. Bates-Smith diagnosed Knipe with dysthymia, but Dr. Bates-Smith "[did] not believe [Knipe's dysthymia] reaches the level of a major depression." AR 176. Dr. Adler noted that Knipe had a "history of depression." AR 415. Dr. Adler, however, also noted that Knipe "did not claim many current symptoms, said her medication helps, and gave no examples in her functioning to suggest impairments due to problems with mood or behavior." AR 415. Dr. Adler also stated that he observed "few signs of mental problems affecting most of her current functioning." *Id.* Knipe reported to Dr. Ellison that she "[could] take care of her personal needs . . . without help" and "[could] shop, cook, and do some housework." AR 425. Dr. Ellison diagnosed Knipe with controlled depression. AR 426.

Finally, during the hearing before the ALJ, the ALJ asked Knipe: "Is there any other conditions that affect your ability to work." AR 659. Knipe responded: "I have depression, but I don't think that that affects it any." *Id.* Based on the evidence, the ALJ found that "[Knipe's depression] has caused only transient and mild symptoms and limitations, has existed for less than twelve months, is well controlled with treatment or is otherwise not adequately supported by the medical evidence in the record." AR 25A. Additionally, the ALJ found that Knipe's "testimony did not indicate significant problems related to depression." AR 25A, 26. The ALJ

thus concluded that depression "does not constitute a severe medically determinable impairment." AR 26. Substantial evidence establishes that depression constitutes a slight abnormality that has no more than a minimal effect on Knipe's ability to work. Under these circumstances, the ALJ did not commit legal error at step two by finding that depression did not constitute a severe medical impairment. On remand, however, the ALJ must consider the material evidence from Dr. Alvord, who diagnosed Knipe with "major depressive disorder, recurrent (moderate)."

**D.  Knipe's Credibility**

Knipe argues that substantial evidence in the record did not support the ALJ's credibility finding and that the ALJ provided inadequate reasons for discrediting Knipe's complaints. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

At step two, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision

may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson* 359 F.3d at 1196-97 (9th Cir. 2004).

At step two of the credibility assessment, the ALJ found that Knipe's statements to physicians regarding her activities of daily living conflicted with her alleged functional limitations. At the hearing before the ALJ, Knipe testified that she has blackouts once or twice a week, gets four to five hours of sleep a week, and has trouble understanding plots in movies and books. AR 661, 667, 669. Recounting the evidence in Knipe's medical records, the ALJ noted that Knipe spends her day playing with her youngest child, performs household chores, watches the news, knits, reads, and manages her own finances. AR 31. Knipe leaves her home once or twice a week to buy food and attend medical appointments. *Id.* The ALJ's summary of Knipe's activities of daily living are consistent with what Knipe reported to Dr. Adler: "The client spends her time playing at home with her youngest child, doing housecleaning/chores, watching the news, reads and just started knitting; . . . She leaves home 1-2 times [per week]." AR 414. Knipe also told Dr. Adler that she "handles her own finances." *Id.* Dr. Adler and Dr. Ellison both deemed Knipe capable of handling any funds granted by the Social Security Administration. AR 416, 428.

Additionally, because Knipe had not reported sleep deprivation to her doctors and did not appear fatigued at the hearing, the ALJ did not find credible Knipe's statements that she sleeps only one hour a day and drinks fourteen pots of coffee daily. AR 33. Further, the ALJ noted that although Knipe testified to blacking out and falling while holding her baby, when Knipe went to the hospital after the incident, she reported only that she had fallen on the wooden floor. *Id.* The ALJ thus did not fully credit Knipe's reports of frequent mini blackout sessions. *Id.* The medical evidence supports the ALJ's determination that Knipe's report of frequent blackouts has limited

PAGE 26 – OPINION AND ORDER

credibility. For example, in February 2011, Dr. Ellison stated that the medication Keppra controlled Knipe's seizures and that she had her blackouts only while taking another medication, Dilautin, that was no longer prescribed for her. AR 425-27.

The ALJ also considered Knipe's criminal history. Knipe was arrested in 2006 for cashing a forged check and spent 18 months on probation. AR 31; AR 414. According to the ALJ, Knipe's criminal history "present[s] significant issues regarding the sincerity and truthfulness of her application and testimony." AR 31. Particularly because Knipe "alleges frequent, ongoing, unwitnessed blackouts that are not supported by objective findings, her willingness to deceive others for personal gain brings into question the truthfulness of her subjective complaints." *Id.* The ALJ ultimately found Knipe's "subjective complaints and alleged limitations are not fully persuasive or consistent with her work history and the medical evidence, and she is therefore found to be not fully credible." AR 31. Based on the clear, convincing, and specific reasons for partially rejecting Knipe's subjective testimony and the substantial evidence to support the ALJ's determination, the Court finds that the ALJ properly evaluated the testimony.

**E.  Lay Witness Shawn Mackey's Credibility**

Knipe contends that the ALJ did not credit the reports of her fiancé, Mr. Mackey, regarding her cognitive, behavioral, and emotional difficulties. The outcome of the case, argues Knipe, would have been different if the ALJ had given Mr. Mackey's statements due credit. A competent lay witness's testimony "*cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original). The Ninth Circuit has held that "in order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ need not give reasons for discounting each

PAGE 27 – OPINION AND ORDER

individual witness's testimony if the reasons given for discounting the testimony of other witnesses are germane. *Molina*, 674 F.3d at 1114 (stating that the ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

Here, Mr. Mackey completed a seizure report that the ALJ considered. Mr. Mackey reported that Knipe "goes no place regularly," needs reminders to do chores, and has a short attention span. AR 32, 137, 140. The ALJ took into account Mr. Mackey's testimony that Knipe had learning and comprehension problems. AR 32. The ALJ noted Mr. Mackey's reports of Knipe's forgetfulness, difficulty sleeping, and irresponsibility with money. *Id.*

The ALJ gave these reports "some weight" because they were "generally consistent with [Knipe's] allegations. However, results on mental status examination suggest a higher level of functioning." AR 33. For example, the ALJ stated that medical records show that Knipe can make change and manage a checkbook. *Id.* As discussed previously, the mental status examinations referenced by the ALJ support Knipe's ability to remember basic information and manage her own finances. An ALJ may properly discount lay witness testimony when that testimony contradicts the medical records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Additionally, the ALJ found Knipe's testimony about her activities of daily living inconsistent with Mr. Mackey's testimony. Knipe stated in her application that she reads "very well," which indicated to the ALJ that Knipe had a greater attention span than Mr. Mackey

alleged. AR 27, 33, 128. The ALJ also noted that despite Mr. Mackey's testimony about Knipe's fear of seizures, Knipe testified that she cares for her baby on her own, performs household chores, cooks, and shops. AR 26, 33, 124-28. The ALJ gave germane reasons for discounting Mr. Mackey's testimony, and substantial evidence supports these reasons. The ALJ's discounting of Mr. Mackey's testimony was not error.

**F.  RFC Formulation**

Knipe argues that the RFC fails to address the limitations reasonably due to her learning disabilities. Knipe asserts that her learning disabilities impair her ability to understand, remember, carry out, and complete tasks at a reasonable pace. According to Knipe, because the ALJ failed to account for all of Knipe's limitations, the hypothetical relied on by the VE at step five was faulty. In light of the new and material evidence from Dr. Alvord, the Court declines to consider whether the ALJ appropriately formulated the RFC and hypothetic to the VE. On remand, the RFC and hypothetical must reflect any limitations relating to concentration, persistence, and pace supported by the new evidence.

## CONCLUSION

The Commissioner's decision that Knipe is not disabled is REVERSED and REMANDED for further proceedings under sentence six of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

DATED this 29th day of December, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge